**State v. Vinson**
*[Cite as 8 AOA 720]*

*Case No. CA89-09-128*
*Butler County, (12th)*
*Decided November 19, 1990*

*John F. Holcomb, Butler County Prosecuting Attorney, Robert N. Piper III and Daniel G. Eichel, 216 Society Bank Bldg., Hamilton, Ohio 45012-0515, for Plaintiff-Appellee.*

*Thomas G. Eagle, Landen and Eagle, 3737 S. Dixie Highway, Franklin, Ohio 45005, for Defendant-Appellant.*

JONES, P.J.

On June 5, 1989, at approximately 12:30 a.m., defendant-appellant, Antonio Vinson, and several friends stopped for gasoline at a service station on East Avenue in Hamilton, Ohio, while en route to Middletown.

As appellant's companions were pumping gas, Sam Frazier came walking up East Avenue past the station. Appellant approached Frazier to inquire about money Frazier allegedly owed appellant. According to the state's evidence, Frazier's debt was the result of a recent drug purchase from appellant.

A confrontation ensued between appellant and Frazier during which appellant picked Frazier up and slammed him to the pavement on his head. Appellant claimed that when Frazier suddenly turned on him, Frazier accidentally fell. Appellant and his companions then entered their vehicle and continued on to Middletown with appellant claiming he received five dollars from Frazier.

Later that morning Frazier went to Mercy Hospital in Hamilton, where he was treated and released although x-rays showed a linear skull fracture. Frazier died later that same morning. An autopsy established the cause of death as a subdural hematoma, secondary to a fractured skull, an injury which the coroner and pathologist identified as consistent with a blunt trauma to the head.

A grand jury indicted appellant on one count each of involuntary manslaughter, aggravated robbery and felonious assault. At trial, the court granted appellant a directed verdict of acquittal on the aggravated robbery charge. A jury found appellant guilty on the remaining charges and the court sentenced appellant to an eight to twenty-five year sentence on the involuntary manslaughter charge. No sentence was imposed on the felonious assault conviction since it was an allied offense of similar import to the manslaughter charge. Appellant now appeals, and submits the following assignments of error for review:

"Assignment of Error No. 1.
"THE TRIAL COURT ERRED IN PERMITTING THE STATE'S DISCRIMINATORY CHALLENGES OF PROSPECTIVE JURORS."

"Assignment of Error No. 2.
"THE TRIAL COURT ERRED IN LIMITING THE DEFENDANT'S CROSS-EXAMINATION OF THE STATE'S WITNESS."

"Assignment of Error No. 3.
"THE TRIAL COURT ERRED IN ADMITTING THE TESTIMONY OF THE DEFENDANT'S ALLEGED UNCONVICTED BAD ACT AND/OR BAD CONDUCT."

"Assignment of Error No. 4.
"THE TRIAL COURT ERRED IN LIMITING THE DEFENDANT'S USE OF INVESTIGATORY REPORTS FOR CROSS-EXAMINATION OF THE STATE'S REBUTTAL WITNESS."

"Assignment of Error No. 5.
"THE TRIAL COURT ERRED IN PERMITTING TESTIMONY OF THE CONTENTS OF A WRITTEN DOCUMENT WITHOUT ADMISSION OF THE DOCUMENT ITSELF."

"Assignment of Error No. 6.
"THE TRIAL COURT ERRED IN CONVICTING THE DEFENDANT OF INVOLUNTARY MANSLAUGHTER."

"Assignment of Error No. 7.
"THE TRIAL COURT ERRED IN CONVICTING THE DEFENDANT OF FELONIOUS ASSAULT."

Appellant's first assignment of error claims that the trial court erroneously permitted the prosecutor to use his peremptory challenges in a discriminatory manner to

exclude the only black member of the jury venire. Appellant, who is also black, claims that the manner in which the state used its peremptory challenge constitutes purposeful discrimination and is a violation of equal protection within the context of the Supreme Court's decision in *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712.

The Equal Protection Clause forbids the state's use of peremptory challenges to exclude potential jurors solely on account of their race or on the assumption that jurors of one race as a group will be unable to impartially consider the state's case against a defendant of the same race, *Batson, supra,* at 89, 106 S.Ct. at 1719, or to purposely exclude any other identifiable group in the community which may be the subject of prejudice. See, also, *State v. Esparza* (1988), 39 Ohio St. 3d 8, 13, certiorari denied (1989), __ U.S. __, 109 S.Ct. 1657.

Evidence of the state's exercise of peremptory challenges may, in and of itself, establish a prima facie case of purposeful discrimination in the selection of a jury. To establish such a case, the defendant must satisfy three requirements. First, the accused must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the accused is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits those who are of a mind to discriminate to do so. Third, the accused must show that these facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude venire members from the petit jury on account of their race. Such a combination of factors raises the necessary inference of purposeful discrimination. *Batson, supra,* at 96, 106 S.Ct. 1723. Once the defendant makes a prima facie showing, the burden shifts to the state to come forward with a neutral explanation for challenging jurors of the defendant's race. *Id.* at 97, 106 S.Ct. 1723. The prosecutor must articulate a neutral explanation related to the particular case to be tried. The trial court then has the duty to determine if the defendant has established purposeful discrimination. *Id.* at 98, 106 S.Ct. 1724.

Although the excused juror and appellant were both black, so, too, were the victim, appellant's companions, and the state's principal witness. The state cited several non-discriminatory reasons to the trial court for using a peremptory challenge against the only black juror. Among these were the juror's failure to properly answer the standard jury questionnaire by listing a post office box instead of giving his residence; his failure to state on *voir dire* that he had a prior criminal conviction; and his conduct of wearing dark glasses and maintaining a "stone demeanor' throughout the *voir dire* process which the prosecutor claimed inhibited his ability to establish any contact with this prospective juror.

The trial court determined that the state's reasons were valid and refused to find that appellant established purposeful discrimination. As a reviewing court, we should give due deference to those findings. *Batson, supra,* at 98, 106 S.Ct. 1724, fn. 21. We accordingly conclude that the state's use of its peremptory challenge did not violate equal protection nor deny appellant a fair trial and an impartial jury. The first assignment of error is, accordingly, overruled.

In his second assignment of error, appellant submits that the trial court erred in limiting appellant's cross-examination of the state's only eyewitness to the crime. The state's witness, Alicia Bryant, testified that appellant violently assaulted Frazier, picked him up and threw him to the pavement on his head. On cross-examination, defense counsel asked Bryant if she recently had a fight with appellant's girlfriend to which Bryant answered affirmatively. When counsel proceeded to question Bryant as to the reason for the fight, the trial court sustained the prosecutor's objection on the grounds of hearsay. Counsel then withdrew the question.

It is well-settled that the limitation of cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of each individual case. *State v. Acre* (1983), 6 Ohio St. 3d 140. Furthermore, the trial court, in its discretion, may allow collateral acts of a witness to be inquired into during cross-examination only if such acts are "clearly probative of truthfulness or untruthfulness." See *State v. Kamel* (1984), 12 Ohio St. 3d 306, 311; *State v. Leuin* (1984), 11 Ohio St. 3d 172, 174.

Appellant argues that if permitted, cross-examination of Bryant would have revealed

her bias or prejudice towards appellant and would have been indicative of her credibility. In denying the proposed question, the trial court seemed to suggest, and we certainly agree, that appellant's trial should not be tried on the basis of such collateral controversies. See *State v. Heinish* (1990), 50 Ohio St. 3d 231, 240, fn. 5.

We find no abuse of discretion on the part of the trial court and hereby overrule appellant's second assignment of error.

In his third assignment of error, appellant claims the trial court erroneously admitted evidence of appellant's prior conduct and drug-related activity.

During rebuttal testimony, a police officer testified that appellant informed the police that he sold crack cocaine. The officer also testified that appellant offered to turn in drug dealers from the Hamilton area if the police dropped the pending charges. According to appellant, the evidence violates Evid. R. 404, is improper evidence of a plea negotiation, and involves statements by appellant which the state failed to provide in discovery.

The state argues that the evidence in issue was relevant to the motive behind appellant's attack on the victim. It was the state's theory that appellant's motive in beating Frazier was related to Frazier's failure to pay appellant for a purchase of crack cocaine.

Generally, extrinsic acts may not be used to prove the inference that the accused acted in conformity with his other acts or that he has a propensity to act in a particular manner. *State v. Smith* (1990), 49 Ohio St. 3d 137. Evid. R. 404(B) provides, however, that evidence of other acts may be admissible for other purposes such as motive or intent. *Id.* at 140. In the case at bar, the defense asserted that appellant committed no assault upon the victim, that the money involved was merely a loan, and that any physical contact between appellant and the victim was accidental. This creates a material issue of motive and intent. Thus, appellant's "other acts" of drug-related activities are relevant to a determination of motive or intent and are admissible under Evid. R. 404(B).

Appellant also contends that the officer's testimony regarding appellant's offer to turn in other drug dealers in exchange for a dismissal of the charges was inadmissible evidence of an offer to compromise or of a plea bargain in violation of Evid. R. 408 and 410.

In *State v. Kidder* (1987), 32 Ohio St. 3d 279, the Ohio Supreme Court held that the accused's statements to police in which he asked if pending charges could be dropped if he was "straight up about everything" did not contain an offer to plead guilty to any charge, nor did such statements indicate a serious effort at negotiating such a plea. According to the court, the admission of the accused's statements did not constitute a violation of Evid. R. 410. We believe that appellant's statements in the case at bar are similar to those in *State v. Kidder, supra,* and conclude that such statements should not be excluded insasmuch as Evid. R. 410 is "not intended to be used to hamper police at such an early investigatory stage." *Id.* at 285.

Appellant further asserts that the trial court erred in permitting the officer to testify that appellant allegedly admitted that he made a living by selling drugs. According to appellant, the state failed to provide this statement during discovery which requires its suppression.

The state's failure to provide discovery will not amount to reversible error unless there is a demonstration that the failure to disclose was a willful violation of Crim. R. 16, that prior knowledge of the statement would have benefitted the accused in the preparation of his defense, or that the accused was prejudiced by admission of the statement. *State v. Moore* (1988), 40 Ohio St. 3d 63, 66; *State v. Parson* (1983), 6 Ohio St. 3d 442, 445.

The record reveals that during discovery, the state provided appellant with a written summary of the oral statement appellant provided during police questioning. Although the summary does not contain the specific statement which the officer attributed to appellant, the summary contains sufficient reference to appellant's involvement with the sale of crack cocaine. The imposition of sanctions for discovery violations is generally within the sound discretion of the trial court. *State v. Hartcourt* (1988), 46 Ohio App. 3d 52. We believe that the record reveals no willful violation of Crim. R. 16, that appellant had ample notice of the oral statements, and there was no prejudice by the admission of the alleged statement.

For these reasons, and those set forth above, we find no merit to the third assignment of error and hereby overrule the same.

In his fourth assignment of error, appellant claims the trial court erred in prohibiting appellant's use of a police report to cross-examine the state's rebuttal witness.

During cross-examination, appellant sought to question the investigating officer with respect to a police report narrative which contained statements the victim's parents and paramedics gave to police indicating that Sam Frazier claimed to have been assaulted by more than one person. The state objected on the basis of hearsay and the trial court granted the state's motion *in limine.*

It is clear that the report contained hearsay statements within hearsay statements which amounted to "sources of information or other circumstances indicat[ing] lack of trustworthiness" which prohibits the report's introduction. Evid. R. 803(8) (b) and 805. The victim's statement itself does not qualify as a dying declaration since Frazier was not aware of his impending death when treated and released. Evid. R. 804(B) (2). Furthermore, the victim's parents and paramedics were not testifying nor subject to cross-examination. Thus, each part of the combined statement does not conform with an exception to the hearsay rule. Evid. R. 805. Accordingly, the trial court could properly limit cross-examination of the investigating officer when such would have elicited inadmissible hearsay. *State v. Heinish, supra,* at 236. In any event, the victim's statement that he was assaulted by more than one person was introduced into evidence via stipulated hospital records.

Appellant also claims he was prejudiced by the state's failure to disclose this "exculpatory" evidence during discovery. We perceive no prejudice since the claimed exculpatory evidence was, in reality, inadmissible hearsay, and there is no reasonable probability that, had the evidence been disclosed during discovery, the result of the proceeding would have been different. *State v. Wickline* (1990), 50 Ohio St. 3d 114, 117.

The fourth assignment of error is, accordingly, overruled. In his fifth assignment of error, appellant claims that during rebuttal testimony the trial court erroneously permitted the investigating officer to testify from his handwritten notes without either admitting the notes into evidence or permitting an in camera inspection of the notes. We disagree.

The officer indicated that he used his notes to prepare the written summary of appellant's oral statement, a copy of which was provided to defense counsel. The notes in question did not purport to be a verbatim recital of either appellant's statement or the officer's testimony. Accordingly, the notes cannot be considered a "statement" of a witness and subject to inspection under Crim. R. 16(B)(1)(g). *State v. Cummings* (1985), 23 Ohio App. 3d 40. Furthermore, the decision whether to permit an in camera inspection of the notes is subject to the sound discretion of the trial court. *Id.;* Evid. R. 612. The discretion given to the trial judge serves to avoid the rule being used as an additional method of discovery, particularly with regards to work product and pretrial preparation. Accordingly, we find that the trial court did not abuse its discretion in refusing to admit the notes or permit an in camera inspection. The fifth assignment of error is hereby overruled.

Appellant's sixth assignment of error claims that the court erred in convicting appellant of involuntary manslaughter. Under this assignment, appellant submits four issues for review. First, the state failed to prove involuntary manslaughter beyond a reasonable doubt; second, the prosecutor's closing arguments denied appellant a fair trial and due process of law; third, appellant was denied the effective assistance of counsel because trial counsel also defended the hospital which treated the victim prior to his death; fourth, cumulative errors in the case deprived appellant of his right to a fair trial.

Under the first issue, appellant argues that the evidence was insufficient to support a conviction of involuntary manslaughter since the injury which allegedly caused the victim's death was equally likely to result from a blunt object striking the head as it was from the victim being thrown to the ground, striking his head on the pavement. Normally, a reviewing court will not reverse a jury conviction where there is substantial evidence upon which the jury could reasonably conclude that each element of the charged offense has been proven beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St. 2d 169.

In the case at bar, there was not only circumstantial evidence, but direct evidence,

that appellant assaulted Sam Frazier and inflicted the fatal injury. The county coroner and pathologist both testified that a blunt injury to the head caused a skull fracture and the resulting subdural hematoma, an injury which was consistent with the act of slamming the victim on his head onto the pavement. There was also direct evidence, as provided by the eyewitness testimony of Alicia Bryant, that appellant picked up the victim and forcibly threw him to the pavement, causing severe head injuries. We are satisfied that there is substantial evidence upon which the jury could reasonably conclude that the state had proved each element of involuntary manslaughter beyond a reasonable doubt. For this reason, we find no merit to this particular argument.

The remaining issues also form the basis of appellant's seventh assignment of error which claims that the trial court erred in convicting appellant of felonious assault. We will accordingly address these remaining issues within the context of both the sixth and seventh assignments of error.

Appellant claims that the prosecuting attorney's closing arguments were prejudicial, inflamed the passion of the jury, and constituted prosecutorial misconduct. The Ohio Supreme Court has held that prosecutors are granted wide latitude in closing arguments. *State v. Maurer* (1984), 15 Ohio St. 3d 239, 269, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714. In order for a prosecutor's closing argument to be prejudicial, the remarks must be "so inflammatory as to render the jury's decision a product solely of passion and prejudice." *State v. Williams* (1986), 23 Ohio St. 3d 16, 20, certiorari denied (1987), 480 U.S. 923, 107 S.Ct. 1385. It must be no-

ted that defense counsel failed to object to those portions of the prosecutor's closing argument which appellant now claims as prejudicial. In the absence of an objection, the prosecutor's arguments must constitute plain error. *State v. Cooey* (1989), 46 Ohio St. 3d 20, 31. An error does not constitute plain error, unless, but for that error, the outcome of the trial clearly would have been otherwise. *Id.*

We have reviewed the prosecutor's final argument and do not find it particularly egregious nor are we convinced that but for the prosecutor's comments, the outcome of the trial clearly would have been different.

Appellant's next issue claims that he was denied a fair trial because one of his attorneys also represented Mercy Hospital which treated the victim prior to his death. We find no merit to this claim inasmuch as counsel specifically denied representing the hospital in question and because the record as a whole fails to show that counsel's performance was adversely affected or that he otherwise failed to vigorously pursue the defense on behalf of appellant.

The final issue claims that the cumulative effect of each individual error deprived appellant of a fair trial and requires a reversal. We find no merit in this argument since there was no error in the proceedings below. Furthermore the error, if any, was not of a sufficient magnitude to require a reversal.

For these reasons, appellant's sixth and seventh assignments of error are hereby overruled.

*Judgment affirmed.*

HENDRICKSON and KOEHLER, J.J., concur.